23-5086. Whenever counsel for repellent is ready, you can make your appearance and proceed, please. Thank you, your honor. Good morning, may it please the court. My name is Nicole Heron, appearing on behalf of the appellant, Mr. Shell. The Assimilative Crimes Act applies only if the act or omission in question is not made punishable by any enactment of Congress. The Lewis Court gave us the test to use in determining whether assimilation under the Assimilative Crimes Act is appropriate. Everybody agrees that the first part of the test is not met because Mr. Shell's conduct was made punishable by one or more of the federal assault provisions. Accordingly, we turn to the second step of the test and ask whether federal assault statutes that apply to Mr. Shell's conduct preclude application of Oklahoma's child abuse statute. The answer to that question must also be yes. Congress has enacted a whole set of laws punishing assaultive conducts. In addition, just three years ago, this court held in Harris that federal law occupies the field of assaultive conducts. Applying the right legal rule announced in Lewis is mechanical and simple. The government's proposed approach rejects application of the Lewis test and rejects what Harris said about Congress's intent for assaultive conducts. This approach threatens to fill non-existent gaps and violates the spirit of the Assimilative Crimes Act. The label of child abuse in this case is not what the court should consider. That violates the Lewis test because it's not looking at conduct, it's looking at the state statute. And I think that's a major difference in the party's approach, is the government wants to start with the statute whenever the correct starting point is the offense, the conduct. And in this case, it's clear by the indictment that Mr. Shell was charged with engaging in We're not asking this court to find that the assault statutes occupy the field of the entire Oklahoma child abuse statutes because they don't. But in this case, it's clear that the assault statutes cover the entirety of the allegations charged by the government against Mr. Shell. Let me be clear on that. I did not read the case law as focusing exclusively on the conduct of the defendant. What they were looking at is whether these two, I mean, if you look at, I think, Williams would be an example. If you look at the analysis focused on what the statute covered, and in fact, the case, the Kwok Doe case, which is not from our circuit, but I think it's from the Ninth Circuit, looks specifically at what the statute covered. Now, it's a little different than one would do a categorical approach in matching elements and all that because we are focused on what is being the prescribed conduct generally. But it's not a factual what did he do in this case situation. And if that is your position as to what the law is, what's your best case for that? Because that was not my reading of the authorities, that it mattered what the statute said. What matters is the defendant's conduct, and that is made clear in Lewis and again in Harris. And it's also in the language... Well, give me the page of Lewis that you're talking about because I read Lewis and I read Harris and I don't see that. Okay. So, Lewis says, the primary question is one of legislative intent. Does applicable federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue? And the legislative intent is expressed how? In the terms of the statute. That's how intent by legislatures is expressed. Yes, I agree. And the intent is to occupy the entire field of the assault statutes, the federal assault statutes, and that is in Harris when they say, quote, the detailed and comprehensive nature of the federal assault statute also suggests Congress intended to occupy so much of a field as would exclude use of the particular state statute at issue. The wide spectrum... Can I hit the part where you said state statute? That's my point. We're focusing on statutes. We're not focusing on conduct. We're focusing on what the statute, what conduct is prescribed, outlawed by the statute. So, we are looking at the statute, are we not? Yes, we're looking at the conduct in the statutes. So, in this particular case, we would be looking at the assault statutes to determine whether they occupy all of the conduct charged in the particular case. And does it matter here whether Oklahoma's statute is divisible or not? So, it doesn't matter. Why doesn't it matter? In Kwok Dok Do, the court had a footnote in which it talked about the fact that the statute was, in fact, divisible and that the portion in question was the portion by which it measured whether the federal statute and state statute outlawed the same thing. So, why doesn't that Yes, I apologize. This statute, it does matter. In this particular case, it especially matters because the child abuse statute covers conduct that can be child neglect. And I think if I went back and looked at your brief, I would not find the word divisible in it. You made no argument about divisibility, nor did your opposing counsel. So, if it matters so much, why didn't you argue that? Well, I think that whenever the court is talking about divisibility, I am taking it to mean that the child abuse statute can be separated just because it's labeled child abuse doesn't mean that the entire child abuse statute is something that the court should consider whenever you're looking at the conduct. That's more of an elements-based approach. And why should not do that? As I pointed out, at least in the Ninth Circuit precedent, they did exactly that. They noted that a portion of the statute, the visible statute, was at play there. And here, there is no, Oklahoma has both of action of omission and action of commission. And as you note in your reply brief, interestingly, that if they had charged him with an act on page 10, if they had charged him with an act of omission related to failure to protect, that this would be a whole different ballgame. Well, if they're both in the same statute, and we have no reason to think Oklahoma made that statute divisible, and you haven't made any argument to that effect, then why is it, in effect, that what, why don't we view the statute as a whole? Not just the conduct in the indictment, but the statute as a whole. I think that there's a couple answers to that question. One is by looking at the case law by Lewis and Harris and the language in the ACA that says that you look at conduct, that's where you begin. You begin with the charging conduct. So it doesn't make sense that we would look at the state statute and decide that it should be assimilated based on the elements of that statute and what they charge for practical reasons even. In Oklahoma's child abuse statute, it covers things like how Mr. Schell was charged. That's basically just an assault under the federal assault statutes. It would mean that the government, it would lead to ridiculous results where the government could say, okay, Oklahoma's child abuse statute can be assimilated here whenever, say, a 17-year-old gets punched in the face by a stranger. And I don't think that that's what Congress intends. Well, Williams talked about, looked at both statutes, and it looked at what the statutes prescribed. It went so far as to look at what the age difference was on the statutes that were prescribed. So it can't be all about conduct. It's got to be about what the statutes say. And my point is that Oklahoma's statute, in fact, includes both acts of commission and acts of omission. And the fact that he is only charged with the act of commission related to torturing the child doesn't mean that's what the statute's scope is. And so I'm trying to get a sense of how we should evaluate and undertake this analysis when, in fact, yes, and I'm trying to pull up the Assemblative Crimes Act statute now, but if the language speaks in terms of what the offense is punished, what offense, what conduct is punished, well, conduct is punished by a statute, right? Yes, but yes, you're right, it does. But we start with the conduct. We don't start with the statute. Okay, and just, and you're telling me the best case that you have for that is Harris and Lewis, because I don't see that in Harris and Lewis. Yes, and the language of the ACA. Okay. And Harris, in particular, actually talked about assaults and determined that Congress clearly and precisely explicated the range of conduct that qualifies as an assault within areas of jurisdiction. And that is exactly what we have here. And if the court doesn't have any other questions right now, I'd like to reserve the remainder of my time. Yes. Thank you. May it please the Court, Elliot Anderson for the United States. The primary question under Lewis is congressional intent. Did Congress intend to define and punish an offense so thoroughly as to displace any state law covering that same subject? Here, the answer is no. Congress did not occupy the field of child abuse with subsection A7 of the Constitution. So, the question is, did Congress occupy the field of child abuse with subsection A7 of the Federal Assault Statute? To go back to the most recent line of questioning, whether the statute is divisible or not, or how much of the statute we are looking at, we have to ask the question, did Congress occupy the field, which means we have to define the field. We just heard her say, opposing counsel, she's not arguing that Congress occupied the field. So I'm asking you, is the statute divisible? You didn't argue about it in your brief. And is it a relevant inquiry? It is a relevant inquiry, Your Honor, and this part of the statute is assimilated either way. If the field is child abuse, then Congress has not occupied that field. I believe the appellant here is arguing that we've got a subfield here of assaulted child abuse. Even if that's the field, Congress has not fully occupied it. We have two small provisions here. We have misdemeanor child abuse and felony child abuse resulting in substantial bodily injury. I think the defendant is arguing that we're talking about a subset of assaulted child abuse, and I just want to be clear before we move on. You didn't argue anything about divisibility in your brief. I think if I did a word search, that word would not appear. And so I'm asking you, the position you're taking apparently is that you're playing on their field, which is to say that what we're talking about here is assaulted child abuse, and you're saying even Oklahoma's version of assaulted child abuse should be assimilated. Is that your position? That is my fallback position. It's not my primary position, Your Honor. Okay, what's your primary position? The Supreme Court noted in Lewis when it was discussing Brown that that decision turned in part on the fact that child abuse is fundamentally different in kind than simple federal assault. And again, the primary inquiry in Lewis, the court says it twice, it uses the word, we say it again, did Congress intend to legislate on this? We have here a premium example of congressional intent when they amended the Major Crimes Act in 2006. At that point in time, the federal assault statute already had subsection A7, felony assault against a minor resulting in substantial bodily injury. All the moving parts in the assault statute that we have today were present in 2006. Congress looked at it and said, we are not covering enough here. We've got a couple of semicolons on the assault statute. We are not regulating child abuse. Is Congress intending to do that? Congress resoundingly said, no, we will open the door here and borrow child abuse legislation from state law. So Congress does not occupy the field. It views child abuse as different, and it says we're not in the business of regulating that. It holds the door. Assimilation is appropriate here. I'd like to go back to the Lewis test because I feel like appellant is stalling out on the first prong of the inquiry. The first prong looks at conduct. That's relatively easy to resolve here. Did what Mr. Schell admitted to constitute an assault? Yes, it did. That part of the test is the very shortest part of the Lewis opinion. It's equivalent to twisting a stem off an apple. We still have the whole fruit to get into. The congressional intent part, that's what the Supreme Court said is there's no automatic answer. There's no touchstone. We have to look at did Congress intend to legislate and exclude state law, or as this court said in Harris, to punish and preclude application of state law. Lewis expressly contemplates that you will have instances where conduct overlaps and could be charged under state or federal law. This is exactly that kind of case. What Mr. Schell did could have been charged under state or federal law. It was unmistakably child abuse. If it could have been charged under federal or state law, it is either Lewis or Harris. It says that the sort of threshold examination is does federal law target the same thing as state law? And if the answer to that is yes, then you have a hard time explaining why the federal prosecutor should be able to pick and choose and assimilate state law. And I believe it was Lewis, but it may have been one of the other cases. And if that's so, if you're acknowledging then that's right, how do you win? If we can't look at statutes or offenses by their natural categorizations and their ordinary groupings, then we're stuck with problem one of the Lewis test. If we can't look at the child abuse statute as something that every jurisdiction in the United States regulates as a whole and say this is the field, did Congress occupy it, then we stop after Lewis step one. And the Supreme Court said that is not a reasonable interpretation of the statute. If Congress decided how it wanted to handle assaults of minors and then you charge the defendant under Oklahoma's child abuse statute with an assault of a minor, then it is not clear to me at all why Congress has not already spoken to how it wants to treat that. And specifically in answering that question, I want you to deal with the analysis in Williams, which talks about the fact that there was sexual assault that was prosecuted by the state and prosecuted by the feds, and the feds had a different age category than the state, as I think they do here. And what Williams said is Congress has spoken in how it wants to do this. And therefore, we don't care that the state would have a different age category. Congress has said if it's this kind of assault, this is how we want to handle it. And so that's it. Why is that not the case here? In two parts, Your Honor, if I may. First, Congress has not conclusively legislated assault on minors. Congress has touched on two corners of that blanket. But there are gaps. Yes, that is why Congress amended the Major Crimes Act, because they recognized even under the federal assault statute, there is assault on minors that's not being covered. There's a gap in Lewis, too. The subject matter is what I'm talking about. It seems to me what I take from Williams, I'm sorry, what I take from Williams is that what we're talking about is the subject matter. Did Congress look at here's the field of assault on minors. This is how we want to prosecute it, how we want to outlaw it. And then the state comes along and says, oh, well, you know, I'm going to change the age category on that, and I'm going to include another wrinkle here on how I want to do assault on minors. And the feds say, well, okay, that's fine, you do that. But that doesn't mean we're going to bring it into federal court, because Congress has told us how we want to handle that problem. And so I want you to speak to, if you don't have it, okay, we'll move on. But Williams specifically deals with the situation of two assaults. State has it. Feds have it. State has different age category, as the state does here. And when the argument was made by the state in that case that, well, look, there's a gap, you know. What we're trying to do can't be prosecuted in federal court. Well, the Supreme Court said, no, that's not how you should look at that. It's not a gap. It's a choice. It's a choice that Congress has made on how it wants to deal with this problem. And if you try to do something else, you're rewriting what Congress said, and that's part of, of course, the Lewis test, what Congress said it wanted to do with this problem. In Williams, Your Honor, the two offenses, the two statutes were in direct conflict. The only difference between the two of them, the only substantive difference, was the age limit, and you could not enforce the state statute without rewriting or doing violence to the federal statute. There was a one-to-one correlation. That, to me, is similar to Harris, where the state charge was aggravated assault, felonious pointing of a firearm. That is always going to be an assault. And the court in Harris said, when we're comparing assault to assault, Congress has covered that. We've got eight varieties of assault. We have intent running from no intent up to intent to kill. We have punishments running from a fine up to 20 years. Congress has thoroughly covered assault when it comes to assault. The same thing in Lewis. The court said, Congress has thoroughly covered murder. We're comparing murder to murder. The state is trying to impinge on a field that Congress has completely occupied. Here, if there was a felony assault on a child that did not cause substantial bodily injury, there is no federal law on that.  But it has not done what this court found in Harris and what the Supreme Court found in Lewis and gone down the list and defined every possible variation of assault on a child and set forth the penalties and the requirements for that. Isn't there a separate category in Lewis that speaks to the question of occupying the field? There are three tests in Lewis, Your Honor. That is one of them. Okay. Well, what you just described of going down and comprehensively defining a certain area and mapping it, which, mind you, opposing counsel has just said that they're not claiming that this field has been occupied. So we're arguing past where the action is because they're not claiming that is what this is about. So the fact that they have comprehensively covered assault doesn't tell us anything because there are other Lewis tests. And the other Lewis tests go to essentially whether this is something that Congress has spoken to wanting to cover. And, you know, they didn't want to occupy the field, but they've spoken that this is being something they want to cover. Tell me why, if in this situation where Congress has said this is what assault on a minor looks like, not using words, child abuse, but why when somebody in Oklahoma starts beating up a kid, why that would not be what Congress anticipated? Because with respect, Your Honor, what Congress said is this is what assault on a child sometimes looks like, and sometimes we will write a law for that, and other times we won't. So of the three tests in Lewis, is the state law contrary to federal policy? No one has argued that. Has Congress occupied the field of child abuse? No one's – they're not arguing that. Would enforcement of the Oklahoma statute rewrite a federal provision? The answer here is no. And the Lewis court recognized when it specifically cited the pre-Lewis decisions from the Fifth Circuit and Brown and Fessler, holding that child abuse is different in kind from simple federal assault and assimilating those statutes, the Supreme Court said we're not going to disturb that because – and they cited two reasons. One, in the context of child abuse, the federal assault statutes are not as comprehensive as the homicide statutes. And two, the relevant connections between the statutes are more attenuated. They're not as direct as they are when we're looking at assault or assault or homicide or homicide. The Roka case out of the Ninth Circuit, that was a simple assault. That was a prison fight. There were no children involved. There are no children in Harris. But the version of child abuse in the state, as is the case in Oklahoma, is prosecuted both by acts of omission and acts of commission. And what you have charged is a violent action directed at a child. So that's what we're talking about. Both of you have made that the universe that we're fighting in. And if that's the universe we're fighting in, why isn't it a rewriting of what the feds have said we want to do as it relates to violent assaults on a child to bring in Oklahoma's version of that? If we stop there, Your Honor, we would be stopping after the first step in Lewis. State law punishes this conduct. Federal law punishes this conduct. Are we done? No. Because we will nonetheless assimilate if Congress hasn't expressed an intent to displace the state law. And that's Lewis quoting the Fitzpatrick holding. But, again, congressional intent. And Congress in 2006 and again in 2013, when it amended the Major Crimes Act, in 2013 it collapsed most of the definitions of assault down into simple felony assault. Then it listed felony assault on a person under the age of 16. And then it retained felony child abuse. But Congress, we rarely have this clear an expression of congressional intent. But has Congress taken up a position or insisted that state law not rewrite its work on child abuse? Quite to the contrary. Why should it have to insist? I mean, if it has made a policy choice, which is what Williams suggests, a policy choice has been made, then why should it have to do any more than allow that to speak for the fact that And I think part of what at least some of this case law talks about the notion that we want to be clear that what this Assimilative Crimes Act was not intended to do was to create a broader menu for the prosecutor to decide, pick and choose, what they want to choose. In other words, I can do a fed crime, I can do a state crime, and I'll do the state crime. That's not what this is about. It's supposed to be allowing for gaps that are real. Your Honor, the possibility of prosecutorial discretion between state and federal charges is a necessary outcome of the Lewis opinion. If it weren't, there would be no second part of the test. Oh, so you're saying that if the feds prosecuted exactly the same thing the states do, that you can make the choice as to whether you want to prosecute them with a state offense and a federal offense? Is that what you're telling me? If we're assimilating state law and none of the three tests in Lewis are met, then yes, there will be overlap. Oh, then give me the case that says that, because I've not read a single case that tells me that. Lewis says that. Lewis says we have a defendant who could be charged under state and federal law. Is there still a choice to be made? Sometimes there is, if Congress has not done enough to express that they've taken a position intended to displace the existing state law. And with respect here, Your Honor, the hasty amendment to the federal assault statute at A7, adding an elevated penalty for someone who assaults a victim under 16, that is not taking up a position that cannot coexist with state law. If there are no further questions, I'll conclude. Well, there is. I've been listening quietly to all of this, because in taking out the statutes and putting them side by side, trying to unravel on the basis of whether or not you have the choice of charging under the Assimilated Crimes Act. And I've listened to the arguments here, and I'm still a little bit confused. So what your response to be in the question that I've written out for myself to help me understand, I hope, how we go about resolving this matter. Here's my question to you. I've written it out specifically. Your briefing emphasizes that the Oklahoma child abuse statute does not cover, quote, approximately the same conduct as the federal assault statute because it covers acts of omission. But defendant is not charged with an act of omission, and federal assault statutes such as 18 U.S.C. 113 A7, for example, cover this exact conduct. Why does that not defeat assimilation under the plain language of the Assimilated Crimes Act? Your Honor, my time has expired. May I respond? I don't care what your time is. I agree. I want an answer to that question. I need it. Lewis says not to stop there. Lewis has expressly not to do that. If you've got a defendant who could be charged at a prosecutor's discretion under state law or federal law, that does not end the inquiry. We will still assimilate. State law will still be available unless the state law is contrary to a federal policy, unless Congress has occupied the field, or unless imposing that state law is going to rewrite a carefully crafted term. Well, let me stop. I see the problem because you and I are reading it different. We're coming to the same question, and the conclusion is different. So go ahead and finish your answer for me. Your Honor, Lewis understands and accepts that there will be overlap, but overlap doesn't equal occupation. And sometimes federal law and state law will result in a Venn diagram where a person could be charged under either, and Lewis says stop. Still assimilate unless Congress has somehow displaced the state law. That's what's missing here. Congress has been entirely hands-off on state child abuse law. They don't want to meddle with it. They haven't been hands-off on what an assault is, and here the facts are very clear, the shake and bake and throwing the baby. I mean, how much more assault can you get? It could be, but even that, Your Honor, does not cover all forms of assaultive child abuse. Congress has not even tried to occupy that tiny subset of the field. Thank you. Thank you. No, not cases submitted. You have some time. I apologize. And counsel, it's complicated for me anyway. I want to get to the right answer, so thank you. Thank you. I just have a few things I want to rebut. First, I want to be clear that we are arguing that the federal assault statute occupies the field of assaultive conduct, not child abuse, but assaultive conduct. Thank you for that. The second thing is the government said that Lewis said that they weren't going to disturb, that the government's response to the question about Fessler and Brown and the Lewis case was incorrect. Lewis did not say that they said they were not going to disturb Fessler and Brown. They didn't say that they agreed with those decisions. They just said that they weren't going to address it. Obviously, Fessler and Brown, they were Fifth Circuit cases, and they were decided prior to Lewis and prior to the Lewis test that the court considered in Lewis. So they weren't going to speak to it because it wasn't relevant at that time, and it makes sense that they want to speak to it, because if it's a conduct-based test, then they would have to go back and look at the conduct in those cases. There was no reason for them to do that. The last thing is the government, Lewis does not allow the government to just choose a statute because it likes one statute better than the other. That's not the Lewis test. And what's your case law that says that that's not what the Lewis test is? I think that there's, I think that that's addressed in Harris. You can't just pick and choose because you prefer a certain statute based on punishment, based on whether it's easier to charge. You look at the conduct at issue, not at the elements. This isn't like a charge under the Major Crimes Act. This is the General Crimes Act, and it assimilates differently. If the court has no other questions, I'm ready to submit. No other questions. Thank you. Case is submitted. Thank you, Counsel. As indicated, we will take now a brief 10 minute break and we will return. Thank you.